Thomas H. Ball *et al.*

*v.*

Ferdinand Siegel *et al.*

*Filed at Ottawa January 25, 1886.*

116  137
136  217
 35a 557
116  137
 64a 491
 66a 575

116    137
107a ⁵658

116    137
210   ⁴183

1. TRADE MARK—*in what it may consist—and whether equity will interpose to protect it.* The words "health-preserving," preceding the word "corset," in the name adopted by the manufacturer of corsets made under letters patent, but describe a quality of the corset, or the effect which its use will produce, and can not therefore be employed as a trade mark.

2. It is well settled that directions, advertisements, notices, etc., constitute no part of a trade mark, and also that no one can obtain a trade mark in the form, appearance or finish of his goods, so that another may not lawfully make his goods like them, nor can there be a trade mark in the form or color of a package or box.

3. Even if a party has a trade mark in the name of "Ball," and picture and words and form of lettering on the labels pasted on his boxes containing corsets, there is no infringement of the same when a different name is used by another manufacturer, with a picture, words and form of lettering on the labels pasted on his boxes so totally unlike those of the former as that no one can reasonably mistake the one for the other.

4. As a general rule, exact similitude is not required to constitute an infringement of a trade mark, or to entitle the complaining party to protection; but if the words of the alleged infringed device are such as would be likely to mislead persons in the ordinary course of purchasing the goods, and induce them to suppose they were purchasing the same article, then the similitude is such as entitles the injured party to equitable protection, if he takes seasonable measures to assert his rights and prevent their continued invasion.

5. But a court of equity is not bound to interfere when ordinary attention will enable purchasers to discriminate between the trade marks used by different parties.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. George Gardner, Judge, presiding.

This was a bill in equity, in the Superior Court of Cook county, by Thomas H. Ball, Herman Prenzlauer and Simon Florsheim, against Ferdinand Siegel, Henry Siegel, Emanuel

Siegel and Gustav Schilling, to enjoin the use of appellants' trade mark, adopted to designate corsets manufactured by them, and also to enjoin appellees from copying hand-bills, labels, advertisements, and circulars and bills. The bill alleges that appellants are owners of certain letters patent for corsets of a certain construction, which they commenced to manufacture in 1880; that these corsets were constructed with coiled wire elastic sections in the sides of the corsets, extending from under the arms down over the hips; that these coiled wire elastic sections gave the corset a different exterior appearance from any other known corsets, so that cuts representing these corsets appeared differently from any other cuts or pictures; that in 1880 the appellants adopted the name of "Ball's Health-preserving Corsets" for their corsets, which they manufactured under these patents; that they printed this name upon a label which they applied to the end of the box in which each corset·was put up and sold; that they also put a label of the size of the cover of this corset box thereon, on which were printed certificates of recommendation signed by eminent physicians of Chicago; and they also printed a circular or hand-bill, setting forth the special merits of their new corsets, one of which was placed in each box with the corset; that in addition to these three labels that accompanied each corset sold by appellants, appellants printed what they termed an advertisement, showing a picture of their particular style of corset. They set forth in this advertisement the merits of their particular style of corset, calling it "Ball's Health-preserving Corset," made of elastic sections of coiled wire spring, etc. In addition to this, appellants also issued what they called a bill of sale circular, which they placed in the hands of merchants, setting forth the merits of the "Ball Health-preserving Corsets." They also issued an envelope, of the size used by merchants who sell small packages, upon which was the picture of the corset, with the name of "Ball's Health-preserving Corset," and upon the reverse side the

recommendation of the physicians, and this envelope was distributed to merchants, etc., as an advertisement. The bill then charges that after appellants had established a large trade for their corsets, appellees commenced manufacturing precisely the same corset; that appellees adopted for the name of their corset, "Schilling's Health-preserving Corset;" that they obtained certificates from the same number of prominent physicians of Chicago as appellants had, using the same language, and having the respective certificates of about the same length as the certificates of appellants, and had them printed in the same form on a label of a size to exactly fit the top of the cover of the box, designating their corset as "Schilling's Health-preserving Corset;" that appellees printed the same circular or hand-bill which the appellants had printed and placed inside of each box containing their "Ball's Health-preserving Corset," using substantially the same language, except heading it "Dr. Schilling's Health-preserving Corset," and placed one of them in each box with each corset; that appellees also copied the advertisement, making the same cut representing the same elastic coiled wire sections in the corset, and that appellees also copied the bill of sale circular that was furnished to the dealers largely, excepting they called their corset "Schilling's Health-preserving Corset," having substantially the same language of recommendation and commendation.

Motion was made before the Superior Court for a temporary injunction, and the court denied the motion. Thereupon the counsel for the respective parties entered into a stipulation, which, omitting the caption and signatures of counsel, is as follows:

"It is stipulated and agreed by and between the above named parties, through their solicitors, that the defendants' demurrer in said cause may be withdrawn by leave of the court; that the judge may enter an order dismissing the bill in this case, and allow an appeal to the Appellate Court for

the First District, to the complainants, from said decision dismissing the bill, upon a sufficient bond being filed by the complainants; that said hearing on said 21st day of May may be considered as a final hearing, and that the several affidavits and exhibits and other proofs adduced and submitted by the complainants may be considered as original evidence tending to prove the facts alleged in the complainants' bill of complaint, and the affidavits and other proofs adduced and submitted as evidence on the part of the defendants at said hearing may be considered as original evidence tending to show the facts as claimed by the defendants, and that the bill of exceptions in this case to be made and certified to by the court may consist of the bill of complaint and the affidavits, exhibits and proofs adduced, respectively, on the part of the complainants and defendants, so that the evidence in the case to be considered by the Appellate Court may be made up of said affidavits and exhibits adduced by the respective parties, and now on file in said cause; and the clerk, in making up the bill of exceptions, shall incorporate in said bill, as evidence in the case, the aforesaid affidavits and exhibits used by the respective parties as aforesaid, all such evidence to be considered by the Appellate Court, subject to all legal objections."

In pursuance thereto the court ordered and decreed, first, that the defendants be allowed to withdraw their demurrer heretofore filed herein; and second, that the bill of complaint herein be dismissed at the cost of the complainants, the complainants' motion for an injunction having been overruled. And the complainants pray an appeal from the order of the court dismissing the bill of complaint, to the Appellate Court in and for the First District, which is allowed on filing the complainants' individual bond, without security, in the sum of $300, the said bond to be filed on or before the 3d day of September, A. D. 1883; and the certificate of evidence, prepared in accordance with the said stipulation on file, shall be

signed and filed on or before the 1st day of October, 1883. This order and decree was affirmed in the Appellate Court, and the present appeal is from that judgment.

Messrs. COBURN & THACHER, for the appellants:

It is not necessary that the trade mark should have been attached to the corsets. The trade mark adopted need not be affixed to the goods, but it will be sufficient if it is so connected with the goods as to be visible, and so that the goods may be distinguished by it. *Candee, Swan & Co.* v. *Deere & Co.* 54 Ill. 439.

The words, "Dr. Morse's Indian Root Pills," were held to be a good trade mark when applied to boxes containing pills. (*Comstock* v. *White*, 18 How. Pr. 421.) "Parlor Matches" was held to be a good trade mark on a box containing matches. (*Swift* v. *Dey*, 4 Rob. 611.) The words, "Akron Cement," was held to be a good trade mark on packages containing cement. (*Newman* v. *Alvord*, 49 Barb. 588.) In *Croft* v. *Day*, 7 Beav. 84, the court held that the complainant had a valid trade mark in the words, "Day & Martin Blacking," when applied to bottles containing blacking, and to trade cards covering the same. In *Braham* v. *Bustard*, 9 L. P. (N. S.) 199, the court held that the complainant was entitled to the words, "Excelsior White Soft Soap," on jars or casks containing soap.

If the appellees had the right to make corsets exactly like those made by appellants, they did not have the right to copy appellants' labels, hand-bills, circulars and advertisements, and to attach them to their goods, so as to deceive and defraud the public, and sell their goods upon the reputation created for the goods by the appellants. This is such a fraud as will justify an injunction. *Knott* v. *Morgan*, 2 Keen, 213; *Williams* v. *Johnson*, 2 Bos. 1; *McLean* v. *Fleming*, 96 U. S. 245; *Croft* v. *Day*, 7 Beav. 84.

Messrs. FLOWER, REMY & GREGORY, and Mr. JOHN CHUMA-SERO, for the appellees:

The only way in which a party can acquire the exclusive right to a particular name or designation, is, in the case of a book or publication, by copyrighting under the act of Congress; and in the case of firms, etc., by incorporation under the statute. Where no incorporation is had, the legal right in the exclusive use of the name must first be established at law before a court of equity will interfere. *Newby* v. *Railroad Co.* 1 Deady, (U. S. C.) 609.

The words and phrase, "Health-preserving Corset," can not constitute, or be appropriated by the appellants, as an exclusive trade mark. Such descriptive names or titles are not subjects of exclusive appropriation. *Cazwell* v. *Davis,* 58 N. Y. 223; *Canal Co.* v. *Clark,* 13 Wall. 311; *Wolf* v. *Goular,* 18 How. Pr. 64; *Canham* v. *Jones,* 2 Veasy & Beams, 218; *Burke* v. *Gassen,* 45 Cal. 468; *Choynoke* v. *Cohen,* 39 id. 501.

When the name or words used are so used to signify a fact, or when, with what purpose soever used, they do signify a fact which others may, by the use of them, express with equal truth, they have an equal right to them for that purpose. 58 N. Y. 235; *Collins Co.* v. *Cowen,* 3 Kay & J. 428.

Injunction will not be granted until the right has been judicially determined, in cases of this nature, unless the case is clear and free from all doubt. High on Injunctions, sec. 1097, p. 719.

Where the name or words claimed to be protected as a trade mark is or are "generic," or merely "descriptive" of the article manufactured, and can be applied with truth by other parties, they are not entitled to legal protection as a trade mark. *Dunbar* v. *Glenn,* 42 Wis. 137; *Canal Co.* v. *Clark,* 13 Wall. 234.

In support of these views, see *Wolfe* v. *Goulard,* 18 How. Pr. 64; *Fetridge* v. *Wells,* 4 Abb. Pr. 144; *Town* v. *Stetson,*

5 id. (N. S.) 218; *Phalon* v. *Wright*, 5 Phillips, 464; *Perry* v. *Trufitt*, 6 Beav. 66; *Millington* v. *Fox*, 3 M. & C. 338.

No circular, price list or advertisement, no matter how frequently repeated, can constitute a trade mark. *Candee* v. *Deere*, 54 Ill. 439.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The words, "health-preserving," preceding the word, "corset," beyond all question but describe a quality of the corset, —*i. e.*, an effect which its use will produce,—and can not, therefore, be employed as a trade mark. *Amoskeag Manf. Co.* v. *Spear*, 2 Sandf. C. C. 599; *Canal Co.* v. *Clark*, 13 Wall. 311; *Manufacturing Co.* v. *Francis*, 101 U. S. (11 Otto,) 51; *Gilman* v. *Hunnewel et al.* 122 Mass. 122; *Larrabee* v. *Lewis*, 67 Ga. 561; *Royal Baking Powder Co.* v. *Sherrell*, 93 N. Y. 331. Many of the cases illustrating this principle will be found collected in Freeman's note to *Partridge* v. *Menck*, 47 Am. Dec. 292, 293. See, also, Upton on Trade Marks, 114, *et seq.;* Brown on Trade Marks, secs. 164, 657, 658. It is well settled, moreover, that directions, advertisements, notices, etc., constitute no part of a trade mark, (*Candee, Swan & Co.* v. *Deere & Co.* 54 Ill. 462,) and that no one can obtain a trade mark in the form, appearance or finish of his goods, so that another can not lawfully make his goods like them. (*Candee, Swan & Co.* v. *Deere & Co. supra;* Brown on Trade Marks, sec. 605.) Nor can there be a trade mark in the form or color of a package or box. *Morgan's Sons Co.* v. *Troxell*, 89 N. Y. 292; *Moorman* v. *Hoge*, 2 Sawyer, 78; *Harrington* v. *Libby*, 14 Blatchf. 128.

Conceding that appellants had a trade mark in the name of "Ball," and in the picture and words and form of lettering on the labels pasted on their boxes, it is evident that the name, "Schilling," or "Dr. Schilling," could not be mistaken for that of "Ball," and that if the picture, words and form of

lettering on the labels pasted on appellees' boxes were totally unlike those pasted on appellants' boxes, the one could not reasonably be mistaken for the other, and there could, in neither respect, be any infringement of a trade mark. The only question is, whether appellees were, by devices and false representations, as charged in the bill, selling or causing to be sold their corset, when the purchasers were desiring to purchase, and supposed they were purchasing, appellants' corset.

Affidavits were read in evidence by appellants to prove active efforts by appellees to sell Schilling's corsets as Ball's corsets; but some of them were inadmissible because based on mere hearsay, and others were insufficient because proving acts only of third parties, and not sufficiently connecting appellees with them, either by showing that they were done under the direction of appellees or with their approval. The balance of appellants' affidavits were neutralized by counter-affidavits on behalf of appellees—at least so far that we can not say the allegations of the bill resting on them for support are clearly proved. The boxes in which appellees' corsets are placed to be sold, are of the same shape, size and general color as those in which appellants' corsets are placed to be sold. It does not appear, however, that there is anything unusual in the shape or structure or color of these boxes, and, so far as we perceive, this similarity may result from the use required, and the convenience of the makers of the boxes —at all events, it does not appear that this may not be so, and we regard it a reasonable inference in the absence of all proof as to purpose or motive. The labels on the boxes are dissimilar. That on the end of appellants' box has the picture of a corset, and reads: "Ball's Health-preserving Corset.—Drab.—. . . . Size." That on the end of appellees' box has no picture of a corset or of anything else. It reads: "Dr. Schilling's Self-adjusting Corset.—Drab.—. . . . Size." The lettering is unlike in every respect. The types are different, the lines run in different directions, and the reading

is different. The most casual observer would, at any distance at which he could distinguish the appearance of these labels from labels of any other description, distinguish the difference. The label on the top of the lid of appellants' box has, in the centre, lengthwise, a picture of a corset, with lettering on each side extending irregularly upward and downward, parallel with and corresponding to the irregular outline of the sides of the corset, reading, on the one side, "Coiled Spring," and on the other, "Elastic Section," and over the picture of the corset, in a single line running lengthwise with the label, the beginning and ending being about equi-distant from the ends, is printed, in caps, the words, "What Eminent Chicago Physicians say of it." The label on the top of the lid of appellees' box has no picture of a corset upon it, but it has, in the centre, lengthwise of the label, a picture of Dr. Schilling. There is no lettering of any kind, either extending perpendicularly, parallel with, or over this picture, as on the other label; but to the right and left of the picture, in the upper margin and near each end of the lid, in distinct single lines of caps, are printed, in each line, the words, "Opinions of Eminent Physicians of Chicago." On both labels, on each side of the pictures, are physicians' certificates,—those on the one certifying to the excellence of the "Ball Corset," and those on the other to that of the "Schilling Corset,"—and appended to these are what purport to be *fac similes* of the signatures of the respective certifying physicians. The same names do not certify to each certificate, and the phraseology is not the same, in form, in each case, and the *fac similes* are as different as the signatures of different individuals ordinarily are. Along the upper sides and ends of the lids of the boxes of each party is a narrow border, but that on appellants' box consists of small, alternate stripes of red and white—the red stripes being, perhaps, four times broader than those of the white—while the border on appellees' box is plain red.

10—116 ILL.

It is thus apparent that in respect to the tops as well as to the ends of the boxes the difference can be detected by even casual observation, as far as one box of this size and shape can, by the use of dissimilar labels, be distinguished from another.

With respect to the circulars in each box, there is a palpable distinction, obvious to any one, even without reading. The display letters in the head lines are entirely different in shape, shading and size, and the paper in appellants' box is shorter and narrower than that in appellees' box, and there is a difference in the quality and whiteness of the paper, and in the form, shading and size of the letters in the body of the circulars, plainly distinguishable as far as the outlines of the letters are visible. At the head of appellants', in large caps, is the word "Ball's." At the head of appellees', also in large caps, are the words, "Dr. Schilling's." One circular commends "Ball's" corset, and the other commends that of "Dr. Schilling." It is true that in cases of this kind, as a general rule, exact similitude is not required to constitute an infringement, or to entitle the complaining party to protection; but if the form, marks, contents, words, or other special arrangement or general appearance of the words of the alleged infringer's device, are such as would be likely to mislead persons in the ordinary course of purchasing the goods, and induce them to suppose that they were purchasing the genuine article, then the similitude is such as entitles the injured party to equitable protection, if he takes seasonable measures to assert his rights and prevent their continued invasion. (Thompson's note to *Popham* v. *Cole*, 23 Am. Rep. 28.) But the court is not bound to interfere where ordinary attention will enable purchasers to discriminate between the trade marks used by different parties. *Popham* v. *Cole*, 66 N. Y. 69; 23 Am. Rep. 22, and cases there cited; *Morgan's Sons Co.* v. *Troxell*, 89 N. Y. 292; 42 Am. Rep. 294; *Manufacturing Co.* v. *Francis, supra; Reed* v. *Richardson*, 45 L. T.

(N. S.) 54; *Beard* v. *Turner*, 13 id. 736; *Leidesdorf* v. *Flint*, 7 N. W. Rep. 174; *Eggers* v. *Heink*, 63 Cal. 445.

Applying this rule to the facts before us, there clearly ought to be no relief decreed. To entitle a complainant, in cases of this character, to the relief here sought, the right must be clearly established by the evidence. *Partridge* v. *Menck*, 2 Barb. Ch. 101; High on Injunctions, (1st ed.) sec. 676; Hilliard on Injunctions, p. 407, sec. 43. In no view can this be said of the appellants' right, under the legitimate, pertinent evidence in this record.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

This case, when first considered, was assigned to the late Justice DICKEY to prepare the opinion, but no opinion having been prepared in his lifetime, it was re-assigned at the November term, 1885.