Bolander v. Peterson.

HENRY M. H. BOLANDER
v.
CHARLES W. PETERSON.

*Injunctions—Trade Name.*

The word "Snusmagasinet," meaning "Swedish Snuff Store" can not be appropriated as a trade name, being merely descriptive of the business.

[Opinion filed April 21, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding.

Messrs. FREEMAN & WALKER, for appellant.

Messrs. COOK & UPTON, for appellee.

GARNETT, J. In September, 1886, appellant, a dealer in snuffs at No. 95 East Chicago avenue, in the city of Chicago, adopted the words " Svenska Snus Magasinet," as the name of his store, placing a sign thereon with those words on it. Over that name he has ever since offered his goods to the public, his letter heads, cards, labels for packages of snuff and newspaper advertisements bearing those words, which he now alleges an exclusive right to use as a trade name, on the ground that he was the first to appropriate the same.

In the summer of 1889, appellee, also a dealer in snuffs, at number 39 East Chicago avenue, altered the sign on his store from " C. W. Peterson, Nya Snus Fabrick," to " C. W. Peterson, Svenska Snus Magasin," and advertised his store by the name of " Fran Snus Magasinet." The newspapers used by both parties to advertise their snuffs were Swedish papers, read exclusively by Swedes, who are the chief consumers of the snuffs. The bill alleges that, by the means described, appellee has misled the trade, and caused it to be believed that his goods are the goods of appellant, whereas appellee's goods are much inferior to appellant's, and thereby the reputation of appellant's store and goods is seriously impaired. A temporary injunction was granted on the prayer of the bill, restraining appellee from employing in any advertisement, the name "Svenska Snus Magasinet," or " Fran Snus Magasinet," or " Svenska Snus Magasin," or any name similar thereto. Appellee having demurred to a part of the bill and answered the rest, a motion to dissolve the injunction was heard, on the bill, answer and affidavits. The injunction was dissolved and thereupon, on motion of appellant, the bill was dismissed for want of equity.

From the affidavits, it appears that the appellant's label for his packages was thus:

Bolander v. Peterson.

---

Anchor Brand

# NORRKÖPINGS.

# SNUS

## TRADE MARK.

## SVENSKA SNUS MAGASINET

## SOLE AGENTS.

# CHICAGO ILL.

[Printed in black upon white ground, with an anchor printed in red across its face.]

And appellees' this:

# EAGLE BRAND

## TRADE MARK.

# STOCKHOLM.

# --SNUS--

# C. W. PETERSON

# MANUFACTURER

### 39 EAST CHICAGO AVENUE CHICAGO ILL

### NOTICE.

Factory No. 8, First District Illinois.

The manufacturer of this SNUFF has complied with the requirements of law. Every person is cautioned under the penalty of the law, not to use this package for snuff again.

[Printed in black upon green ground.]

Bolander v. Peterson.

The appellant's advertisement in the newspapers was this:

Se noga efter Skyddsmärket    Trade Mark.    Ej äkta utan det.

Anchor

Rekommende-radt af

BRAND

Förbrukare

SNUS

Har eder handlande det icke insänd En Doller och Ni erhåller 1¼ pund af uppgifven sort fritt på posten.

Följande sorter finnas: Stockholmns, Göteborgs, Norrköpings, Jönköpings, Kalmar, Karlshamns, m fi.

Addressera:  SVENSKA SNUSMAGASINET,
95 E. Chicago Ave., Chicago, Ill.

[Printed in black upon a white ground; the words trade mark were printed across an anchor.]

And appellee's this:

---

## FRÅN SNUSMAGASINET,

39 Chicago Av., expedieras alla sorters Svenskt snus (starkt, friskt och godt). Mot insandandet af en doller, erhåller ni fritt per post 1¼ pund snus.

        C. W. PETERSON, 39 Chicago Av., Chicago.

---

[Printed in black upon a white ground.]

What is the English equivalent of "Svenska Snus Magasinet," is matter of contention. There is no denial of the fact that the terminal "et" means "the." It is admitted that "Svenska" means "Swedish."

The bill alleges that "Svenska Snus Magasinet" means "The Swedish Snuff Magazine," and appellant's affidavit states that "Snus Magasinet" means "The Snuff Magazine."

He is corroborated by his witness, Englund, who swore that the proper designation, in Sweden, of a place where snuff is sold is "Snusbod;" that he never saw nor heard in Sweden the word "Snusmagasin" used in that connection and combination, and does not believe that any such words are used there to describe a place where snuff is sold.

Another affidavit in support of the bill was made by John A. Enander, who swore that he was editor of "Hemlandet," a Swedish newspaper published in Chicago; that he was a graduate of the college at Wenersborg, in Sweden, and famil-

iar with both the Swedish and English languages; that the word "magasin," in Swedish, signifies, when combined with another word like "snus," a place where snuff is sold; that the words "Svenska snusmagasinet," used in that combination, mean in reality only a Swedish "magazine" for snuff, and do not mean grammatically, and do not convey to Swedish ears the idea of a place where imported Swedish snuff is sold. The latter fact is stated in answer to the charge by appellee that appellant was trying, by his advertisements, to falsely impose upon his customers snuffs made by himself in Chicago as goods imported from Sweden.  On the other hand, there is the affidavit of Hannah Frost, stating that she is a Swedish scholar, and that "snus magasin" means, in English, "snuff store;" and the affidavit of Ivan Canders to the same effect. The affidavits also tend to prove, and we think do prove by a fair preponderance, that "snus magasin" was commonly employed in Sweden, many years before this controversy arose, as the designation of a snuff store.

From this statement of the evidence it is quite clear that no fault could be attributed to the Circuit Court if it found, as a matter of fact, that the words sought to be exclusively appropriated by appellant mean "the Swedish snuff store," and assuming, as we should, in support of the decree, that such was the finding, no difficulty is perceived in reaching a correct conclusion.

It will be observed that, beyond the use of the phrases "Svenska snus magasin" and "Fran (from) snusmagasinet," there is no ground of complaint whatever against appellee. In no other respect is there any similarity between the two advertisements, and between the two labels there is no resemblance of device, words or other thing tending to deceive.

So far as the allegations of the bill are concerned, the contention of appellant is for the exclusive right to use the words in question as a trade name; what he complains of is not an infringement of a trade mark, as a sign upon a store or in an advertisement constitutes no part of a trade mark.  Ball v. Siegel, 116 Ill. 137; Browne on Trade Marks, Sec. 98; Candee v. Deere, 54 Ill. 439.

Assuming, however, as appellant does, that the same prin-
ciples which apply to trade marks also apply (as far as the
subject thereof permits) to trade names, the authorities are
adverse to the claims of appellant.

Originality of invention is not essential to the protection
of a trade mark, if, in itself or by its association, it points to
the origin or ownership of the goods. But no one acquires
a right to the exclusive use of a name which would clothe him
with a monopoly of the sale of any goods other than those
produced by himself. A generic name, or one merely descrip-
tive of the article or its qualities, ingredients or characteris-
tics, is entitled to no protection in favor of one using it as a
trade mark. Canal Company v. Clark, 13 Wal. 311; Ball v.
Siegel, *supra*.

To quote from the opinion in Canal Company v. Clark,
*supra:* "And it is obvious that the same reasons which for-
bid the exclusive appropriation of generic names, or of those
merely descriptive of the article manufactured, and which can
be employed with truth by other manufacturers, apply with
equal force to the appropriation of geographical names, des-
ignating districts of country. Their nature is such that they
can not point to the origin (personal origin) or ownership of
the articles of trade to which they may be applied. They point
only to the place of production, not to the producer, and could
they be appropriated exclusively, the appropriation would
result in mischievous monopolies. Could such phrases as
'Pennsylvania wheat,' 'Kentucky hemp,' 'Virginia tobacco'
or 'Sea Island cotton' be protected as trade marks?  *  *  *
It must then be considered as sound doctrine that no one can
apply the name of a district of country to a well known article
of commerce, and obtain thereby such an exclusive right to
the application as to prevent others inhabiting the district, or
dealing in similar articles coming from the district, from
truthfully using the same designation. It is only when the
adoption or imitation of what is claimed to be a trade mark
amounts to a false representation, express or implied,
designed or incidental, that there is any title to relief against
it. True it may be that the use by a second producer, in

describing truthfully his product by a name or combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product, but if it is just as true in its application to his goods as it is to those of another who first applied it, and who therefore claims an exclusive right to use it, there is no legal or moral wrong done.    Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth."

Now Swedish snuff may signify (1) an article made in Sweden, or (2) made by a native of Sweden, or (3) having the same ingredients and proportions as snuff made there.    If the first, appellant can not complain, as he admits that he makes his goods in Chicago; any representation to the contrary would be false and could never acquire any right to equitable protection.    If the second or third, appellee can use the words as truthfully as appellant, both being natives of Sweden, and there being no evidence that appellee's snuffs have not the same ingredients and proportions as those made in Sweden.

That terms in common use to designate a trade or occupation, in connection with other words indicating that a particular class of merchandise is specially dealt in, can not be exclusively appropriated by any one as a trade mark or name, is decided in Choynski v. Cohen, 39 Cal. 501.    There the plaintiff had adopted as the name of his store the words, "Antiquarian Bookstore," and the defendant set up a rival place under the name of "Antiquarian Book and Variety Store." It was held that "book store" could no more be exclusively appropriated as a trade mark than "tinner's shop," "drug store" or "hotel;" that plaintiff's right depended on the word "Antiquarian," which meant no more than that the proprietor dealt in a certain class of books, to wit, ancient books, or books relating to antiquity; that the word was simply to indicate the class of books sold there, in the same sense that the words, "Law Book Store" or "Medical Book Store," or "Divinity Book Store" would indicate that law, medical or religious works were for sale.    The court said the plaintiff could no more appropriate the words to which he set up the

exclusive right, than a shoe merchant could the words, "Ladies' Shoe Store."

These authorities we regard as conclusive against Bolander's bill. The name he has chosen is either misleading as to the character of his goods, or it is merely descriptive, and so not within any recognized rule which guards against its use by others.

The decree is affirmed.

*Decree affirmed.*