## Job Printers Union of Chicago, Ill., v. John J. Kinsley.

1. TRADE-MARKS—*Imitation Forbidden by Statute.*—The statute forbids the use of any imitation of any label or trade-mark adopted by any association or union of workingmen.

2. SAME—*Upon What Grounds Equity Gives Relief.*—In cases of infringed trade-marks equity gives relief upon the ground that one man is not allowed to offer his goods for sale, representing them to be the manufacture of another trader in the same commodity.

3. SAME—*Degree of Resemblance to Constitute an Infringement Incapable of Exact Definition.*—What degree of resemblance is necessary to constitute an infringement is incapable of exact definition as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled.

4. SAME—*What Must be Shown in Order to Constitute Infringement.*—It is not necessary to show that the defendant acted with a fraudulent intention, nor that any one has been actually deceived. It is enough if the defendant has so simulated the complainant's trade-mark that its use is calculated to deceive and there is a probability that patrons will be so deceived.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Affirmed. Opinion filed April 28, 1903.

This is a bill seeking to restrain appellant by injunction from using a trade-mark or label, which it is alleged "so nearly imitates and resembles the label of the International Typographical Union as to deceive and defraud those who are intending to and desirous of obtaining the products of the members" of the said union. It is further charged that the products of the appellant corporation are inferior

in quality to those of appellee and his associates, and that appellant is using the label sought to be restrained "to bring discredit upon" appellee and "deceive and defraud the public."

The answer admits that the bill is properly filed by appellee on his own behalf and that of all other members of the International Typographical Union, which is a voluntary, unincorporated association with several thousand members; that for the purpose of designating the product of the labor of members ·of said association, it adopted a label as set forth in the bill of complaint, which said trade-mark has been extensively used by them, and was properly registered with the secretary of state.

The answer states that appellant is incorporated, that its objects are the formation of a union of the smaller printers who do a job business, the having a label to designate their work, to better their condition, promote mutual interests and afford assistance to each other; that said corporation adopted a label, a copy of which is attached to complainant's bill, and which is being used and displayed on printed matter issued and published by members of the appellant corporation; denies that appellant's label is a counterfeit or imitation of the label of complainant; that it was intended to be such or to defraud members of appellee's association; that the quality of the latter's products is superior to appellant's; that persons to whom appellant issued its label were such as could not comply with the rules and laws of appellee's association, and alleges that said rules were arbitrary and unjust, tending to forestall and increase prices of printing; and denies that appellant is using its label to bring discredit upon complainant· or those claiming through him. It is further set up in the answer that appellant's label "in no way, manner or form, can be considered a counterfeit or imitation of complainant's label; that the words, arrangement and design are different, and that since the beginning of the suit appellant has caused its label to be registered with the secretary of state under an act to protect associations, unions

and persons in their labels, trade-marks and forms of advertising, under which complainant's label is also registered. (R. S., Chap. 140, Sec. 8.)

McDANNOLD, SULLIVAN & JARRETT, attorneys for appellant.

WALTER A. LANTZ, attorney for appellee; STEDMAN & SOELKE, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellee files this bill as agent for himself and all other members of the Typographical Union of North America, several thousands, it is alleged, in number. Land Co. v. Peck, 112 Ill. 408–435. The cause was heard upon bill, answer and replication. The respective labels of appellant and appellee are shown in the pleadings. It appears that both parties use different sizes of the same label, and three of these sizes as used by both parties have a general resemblance respectively to each other, as is apparent from inspection. They are as follows:

APPELLANT'S LABELS.

Job Printers Union of Chicago v. Kinsley.

APPELLEE'S LABELS.

The statute forbids the use of any imitation of any label or trade-mark adopted by any association or union of workingmen.    (R. S., Chap. 140, Sec. 6.)

That there is a general similarity in these labels is evident.    There are differences which are manifest when the respective labels are placed side by side.    But that a stranger unfamiliar with the fact that the labels are used by different and competing organizations might without making a close examination readily mistake one for the other, is, we are compelled to believe, manifest.    The general form of the respective labels is the same.    When placed side by side, one is seen to be somewhat more oval and less elongated than the other.    Except for this slight difference the smallest sizes of the respective labels can scarcely be distinguished without the aid of a microscope to reveal the almost invisibly small words.    The medium sizes likewise would be readily mistaken for each other, unless by close scrutiny.    The largest size of the labels, although in the same general form, can readily be distinguished when placed side by side; but when appearing separately, because of the general similarity in form, might be mistaken for the labels of either of the parties by one who did not know of the existence of the other and rival organization.    It might easily be supposed by one not familiar with the facts set out in the bill of complainant that the appellant's label represented a branch of the appellee's organization, and the similarity would give color to such belief.

The material facts being undisputed and appearing upon the face of the pleadings, there was no necessity for further evidence upon which to base the decree. In cases of this character equity gives relief " upon the ground that one man is not allowed to offer his goods for sale representing them to be the manufacture of another trader in the same commodity. * * * Where, therefore, a party has been in the habit of stamping his goods with a particular mark or brand, so that the purchasers of his goods having that mark or brand know them to be of his manufacture, no other manufacturer has a right to adopt the same stamp, because, by doing so, he would be substantially representing the goods to be the manufacture of the person who first adopted the stamp, and so would or might be depriving him of the profit he might make by the sale of the goods which the purchaser intended to buy. Seixo v. Provezende Law Rep., 1 Ch. App. 195. What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled." McLean v. Fleming, 96 U. S. 245–251. But the court is not bound to interfere where ordinary attention will enable the purchaser to discriminate. Ball v. Siegel, 116 Ill. 137–146, and cases there cited. Heinz v. Lutz, 146 Pa. St. 592–609. It is not necessary, however, to show that the defendant acted with a fraudulent intention, nor that any one has been actually deceived. It is enough if the defendant has so simulated the complainant's trade-mark that its use is calculated to deceive and there is a probability that patrons will be so deceived. Eckhardt v. Consolidated Milling Company, 72 Ill. App. 70–72; New England Awl & Needle Co. v. Marlborough Awl & Needle Co., 168 Mass. 154.

In the present case there is no proof of intention to deceive or defraud or to infringe on appellee's trade-mark. But we are of opinon that the resemblance is so close that

appellant's trade-mark, adopted after appellee's had been some time in use, is calculated and probably will mislead patrons and customers.

The judgment of the Circuit Court must be affirmed.