O'Cedar Corporation, Appellee, v. S. S. Kresge Company, Appellant.

Gen. No. 34,395.

Heard in the second division of this court for the first district at the June term, 1930. Opinion filed December 16, 1930. Rehearing denied December 30, 1930.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellant; WEYMOUTH KIRKLAND, CARL S. LLOYD, J. B. MARTINEAU, JR., and ARTHUR H. STUART, of counsel.

LAWLER, BERRY & McKERCHAR, for appellee; JOSEPH B. LAWLER and G. DONALD WHITEHOUSE, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On February 7, 1929, complainant filed its bill in the circuit court praying that defendant, its agents, etc., be temporarily and perpetually enjoined "from ordering, buying, selling, manufacturing or producing any oils, mops or polishes in which the word 'Cedar' appears. or forms a component part," and "for such other and further relief as equity may require." Prior to October 5, 1923, complainant's corporate name

was "Channell Chemical Co.," but on that date its name was changed under the Illinois statute to "O'Cedar Corporation." The basis of the bill is a written contract, dated April 1, 1919, between defendant as first party and complainant (as Channell Chemical Co.) as second party. After the cause was put at issue by defendant's answer to the bill and complainant's replication, there was a hearing before the chancellor, resulting in the entry of a decree on April 11, 1930, in which the court found (1) that the parties had entered into the contract on April 1, 1919; (2) that defendant at and prior to the time of the filing of the bill, in violation of the terms of the contract, "was ordering, buying and selling oils and polishes, in which the word 'Cedar' appears, other than those manufactured, produced and sold by complainant"; (3) that the oils and polishes that defendant was selling were not a part of the stock that defendant had on hand on April 1, 1919; and (4) that complainant has no adequate remedy at law and that the equities of the cause are with it. And the court decreed that defendant, its officers, agents, etc., are "hereby perpetually enjoined and restrained from manufacturing, buying, ordering, selling or offering for sale any oils or polishes bearing labels or printed matter upon which the words, 'Cedar,' 'Cedar Oil' or 'Oil of Cedar,' appear as the title, caption, trade-mark, trade-name, or name for such oils or polishes, unless the same shall have been manufactured, produced or sold by complainant, *except* when used in the body of the reading matter of any label indicating that cedar oil is one of the ingredients of the product"; and that the costs herein be taxed against defendant, etc. From the decree defendant has appealed.

In the contract it is recited that first party (defendant) "is selling and offering for sale certain oils and polishes, bearing the words 'Cedar Oil' and 'Cedar,'

manufactured for it by various concerns," (naming them); that second party (complainant) "is the owner of trade-marks 'Cedarine' and 'O-Cedar,' which trade-marks and trade-names have acquired a secondary name of 'Cedar,' 'Cedar Oil' and 'Oil of Cedar' in the market among the retail and wholesale customers and jobbers''; and that second party "is exclusively entitled to the use of the word 'Cedar' in the manufacture, production and sale of oils and polishes." It is then stated that "in consideration of $1.00, in hand paid, the receipt whereof is hereby respectively acknowledged, and other good and valuable considerations, and particularly the covenants hereinafter set forth, the parties agree," in substance as follows:

(1) First Party (defendant) "will no longer order, buy or sell any oils, mops or polishes in which the words 'Cedar,' 'O-Cedar' or 'Cedarine' appear or form a component part, nor will they manufacture, produce or sell for themselves, or anyone else, any oils, mops or polishes in which the word 'Cedar,' 'O-Cedar' or 'Cedarine' appear or form a component part, except those manufactured, produced and sold by said second party" (complainant).

(2) First party (defendant) shall have the right to sell any mops or polishes, "bearing the word 'Cedar,'" which it may at the present time have on hand until the same are completely exhausted, but, upon the exhaustion of the stock on hand, it "will no longer order, buy, manufacture, produce or sell for itself, its assigns or anyone else, any mops or polishes bearing the words 'Cedar,' 'Cedarine' or 'Oil of Cedar,' or where any of the above described words form a component part."

(3) Second party (complainant), for itself and its assigns, does "release" said first party "from any and all manner of actions, or rights of actions in law or in equity, for the manufacture, production and sale of cedar oils, mops or polishes, bearing the words 'Cedar,'

from the beginning of the world to the date hereof," and said second party "will prosecute no action, either at law or in equity, against said first party for the above described."

In the bill it is alleged that complainant is an Illinois corporation and the owner of the duly registered trade-marks "O-Cedar" and "Cedarine," that it is a manufacturer and vendor of oils, mops and polishes, and that it has been such since its incorporation in 1908; that defendant is a Michigan corporation and duly licensed to do business in Illinois; that on April 1, 1919, the parties entered into a certain contract (here is set out in full the contract above mentioned); that, in violation of the covenants thereof, defendant "has ordered, bought and sold oils, mops and polishes, in which the word 'Cedar' appears or forms a component part, other than those manufactured, produced and sold by complainant"; that the oils and polishes now being sold by defendant, bearing the word "Cedar," are not of the stock which it had on hand on April 1, 1919, and which was long since exhausted; that defendant for about eight years observed and performed the terms of the contract, but is now buying and selling for itself, and is continuing so to do, in violation of said terms, oils and polishes bearing the word "Cedar" or "Oil of Cedar"; and that complainant has no adequate remedy at law, etc. The prayer of the bill is as first above mentioned.

After defendant's demurrer to the bill had been overruled it filed an answer in which it denied that complainant is the owner of registered trade-marks "O-Cedar" and "Cedarine"; admitted that it entered into the contract of April 1, 1919, but denied its validity because "indefinite," "lacking in consideration," "lacking in mutuality" and being "against public policy"; alleged that its execution was brought about by false representations of complainant's officers, that the word "Cedar" is in general use throughout the United

States in connection with oils, mops and polishes, and that said word is "purely descriptive." Defendant, however, admitted that it had bought and sold "a small quantity" of polishes, "in the name of which the word 'Cedar' forms a component part, other than those polishes manufactured and sold by complainant and which were not a part of the stock which defendant had on hand on April 1, 1919."

On the hearing before the chancellor, complainant introduced evidence showing that when the bill was filed (February 7, 1929), complainant was, and had been for many years, the owner of the trade-marks "O-Cedar" and "Cedarine," used in connection with its business of manufacturing and selling oils, mops and polishes, and which trade-marks had been registered in the United States Patent Office; that said trade-marks and also the word "Cedar" had acquired a secondary meaning as indicating to the trade and customers that oils and polishes bearing said marks or words on labels, etc., were complainant's goods; that complainant had spent much money in advertising and had built up for itself a large and lucrative business in the manufacture and sale of oils and polishes; that shortly prior to the filing of the bill defendant had violated the terms of its said contract with complainant, and especially the provisions of paragraph 1 thereof, and that, when its customers asked for "O-Cedar" or "Cedar" polishes, it sold to them at a less price polishes, labeled "Cedar Oil Polish," manufactured by a concern other than complainant; that thereby, defendant had not only violated its said contract but was guilty of unfair trade competition as to complainant and was "palming off" said polishes manufactured by said other concern as the goods of complainant and thereby greatly injuring complainant.

One of defendant's counsel's contentions, urged as a ground for the reversal of the injunctional decree appealed from, is that the contract upon which it is

based "is void for want of consideration." And counsel argue in substance that complainant's release (as stated in paragraph 3 of the contract) of all rights of action against defendant, because of the latter's previous use of the *descriptive* word "Cedar" on oils and polishes, is no consideration for the contract, or particularly for paragraph 1 thereof wherein defendant agreed that after April 1, 1919, it would not "order, buy or sell any oils, mops or polishes (except complainant's) in which the words 'Cedar,' 'O-Cedar' or 'Cedarine' appear or form a component part," etc. We cannot agree with the contention or the argument. We do not regard any one of these three words as *descriptive* of the character or quality of complainant's oils or polishes. (*Allen v. Walker & Gibson,* 235 Fed. 230, 237; *Keasbey v. Brooklyn Chemical Works,* 142 N. Y. 467, 474.) Moreover, even if the words could properly be considered as so descriptive, that fact would not justify the deceptive use by others of the words, or similar ones, in unfair trade competition where confusion in the minds of purchasers would result. In *DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co.,* 297 Ill. 359, 365, it is said: "Where a manufacturer or merchant has used a mark, word or phrase in such a way that it has become identified with his business and the articles of his manufacture, another will not be permitted to use the same mark, word or phrase so as to lead purchasers to believe they are buying the goods of the former. This rule applies even though the word, name or phrase under which the reputation of the merchant or manufacturer has been acquired is . . . merely descriptive of the character or quality of the articles. . . . The question is one of common honesty, and the courts require the observance of such a standard as will protect the business, the market and the reputation of a dealer against all acts which tend to deceive the public into believing that the goods of an-

other are his goods and to pass them off as such. A merely descriptive term . . . may have become associated with a particular kind of goods or the product of a particular manufacturer in such a way that merely attaching the word to an article of the same kind would amount to a misrepresentation as to the origin of the article.'' (See, also, *Standard Paint Co. v. Rubberoid Roofing Co.*, 224 Fed. 695, 696–7; *Mossler v. Jacobs*, 66 Ill. App. 571, 574–5; *Job Printers Union v. Kinsley*, 107 Ill. App. 654, 658; *Nestor Johnson Mfg. Co. v. Alfred Johnson Skate Co.*, 313 Ill. 106, 112; *LeBlume Import Co. v. Coty*, 293 Fed. 344, 351.)

We have considered counsel's further contentions, (a) that paragraph 1 of the contract constitutes an unreasonable restraint of trade, (b) that the contract in its entirety is not enforceable in equity because it lacks mutuality and complainant has an adequate remedy at law, and (c) that the contract is too vague and indefinite to support the bill or the injunction granted, and are of the opinion that each and all of these contentions are without merit. And we think that under the provisions of the contract, the pleadings and the evidence, the injunctional decree appealed from was rightfully entered. Accordingly it will be and is affirmed.

*Affirmed.*

SCANLAN, P. J., and BARNES, J., concur.