# THE HAZELTON BOILER COMPANY

## v.

# HAZELTON TRIPOD BOILER COMPANY ET AL.

*Injunctions—Use of Name—Trade Mark.*

1. No person can, merely by adoption or use, acquire an exclusive right to the use of the name of another. A person can not make a trade mark of his own name and thus obtain a monopoly of it, which will debar all other persons of the same name from using their own names in their own business.

2. A man may not make use of his own name for the purpose of deception, and such fraudulent use will be enjoined.

3. Subject to the restriction that a name shall not be used for a fraudulent purpose, or to a fraudulent end, one who has not contracted not to do so, may use his name in any lawful business, and apply it to any goods of his manufacture.

4. Where there is no such similarity between the goods manufactured by two corporations of similar names, or their circulars or advertisements, as would be likely to deceive the ordinary mass of purchasers, an injunction will not be allowed to restrain the use by one of them of the name by which it is known.

[Opinion filed May 5, 1891.]

IN ERROR to the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. BANNING, BANNING & PAYSON, for plaintiff in error.

Messrs. BOND & ADAMS, for defendants in error.

Newby v. Oregon C. R. R. Co., 1 Deady, 609, is cited in support of the proposition that a corporate name is a trade mark. The case, when examined, does not support this proposition, as it was upon a controversy involving two Oregon corporations of the same name; one organized under a special act, and the other under the general laws. The clause quoted is in the statement of the case by the court upon a point made that the case was analogous to a trade mark case, and all that the court decided in this case was, that a bondholder could

Hazelton Boiler Co. v. Hazelton Tripod Boiler Co.

not maintain an action in his own name to enjoin the junior corporation from using its corporate name, until it was shown that the older corporation had refused to bring a suit for this purpose.

In the case at bar, the plaintiff in error is a junior corporation from another State, seeking to restrain the senior, or older corporation chartered by this State, from the use of its corporate name. The Hazelton Tripod Boiler Company is an older corporation than the Hazelton Boiler Company.

No court has ever decided that a corporate name was *per se* a trade mark, any more than that an individual name was; both corporations and individuals may have trade marks, and both may exist and do business without having them. That there may be analogies between them is not disputed, but that they are the same thing is emphatically denied.

Hoxie v. Chaney, 143 Mass. 592, is cited as to the effect of a sale of the entire business in carrying good-will and trade marks, but the distinction is stated unwittingly that Hoxie executed an instrument of sale to his partner, which Hazelton did not do.

In this case, Hoxie sold out his interest to his partner in the business of making A. M. Hoxie's Mineral Soap and A. M. Hoxie's Pumice Soap. There were cross-suits, and, in the first, the court held that Chaney had the right to use the two trade marks under an agreement in which "Hoxie, in terms, contributed the good-will of the business," with the tools, fixtures, etc. In the second case, or part of the case, page 295, the court says: "But in reference to what is involved in the transfer of the good-will of the business, it (the decree below) requires some modification. Neither the agreement between Hoxie and Pegram, nor the bill of sale from Hoxie to Pegram, contained any agreement that Hoxie, upon a dissolution of the firm, should not carry on a similar business, further than this is implied by the transfer of the good-will, pure and simple. The general rule of this commonwealth  *  *  * is that a sale does not import an agreement by the vendor not to engage again in a similar business in some other place at a subsequent time. Bassett v. Purcell, 5 Allen, 345, 347."

432    APPELLATE COURTS OF ILLINOIS.

[Vol. 40.]    Hazelton Boiler Co. v. Hazelton Tripod Boiler Co.

In this case the vendor's entire interest in the good-will was, in terms, sold to the partner, and yet the court held that an actual sale of the good-will did not prevent the vendor from again embarking in the same business. In the case at bar the good-will was not sold, the sale was not to a partner, and there was no agreement not to re-engage in a similar business. This authority is clearly against the plaintiff in error, and it undoubtedly states the true rule concerning re-engaging in the same business.

The case of Russia Cement Co. v. LePage, 147 Mass. 206, is referred to; also the case of Sohier v. Johnson, 111 Mass. 242. In Russia Cement Co. v. LePage, it appears that Brooks and LePage were partners, and that they jointly sold their business to the Russia Cement Company and, on page 211, the court says: " When Brooks and LePage sold their business to the plaintiff, they, in express terms, sold the right to use the trade marks belonging to, or in use by, said copartnership."

Commencing at the bottom of page 209, the court states the true rule, the same as stated by this court in Frazer v. Frazer Co., 18 Ill. App. 450, as follows : " It is not upon the ground of the invasion of the trade name adopted by another, but by reason of the contract he has made, that he is deprived of the right himself to use his name, as all others of the same may use theirs."

The decision of this court in 18 Ill. App. 450, is cited as one of the authorities for this proposition, and, as appellant has no such contract with Hazelton, and no agreement that it may use his name at all, much less exclusively, the baldness of appellant's claim again becomes apparent.

In this last case, page 464, it was also held that Frazer was not estopped from re-engaging in the same business, and that his written agreement not to do so was void.

Sohier v. Johnson, 111 Mass. 242, is a case between the executors of the will of W. P. Winchester, who, with Johnson as a partner, had carried on a soap business as " E. A. & W. Winchester," marking that name on each bar of soap. E. A. Winchester had been dead nearly twenty years, and W. P. Winchester about nine years when the suit was commenced,

and Johnson had carried on the same business under this name, which was originally a firm name, but which the court held had become a trade mark by reason of its peculiar use, and it held that Johnson, who, as surviving partner, had continued the business under that name. nine years after the death of the last Winchester, had a right to use that name as a trade mark. It is difficult to see how this case applies to the case at bar.

Sec. 91 of Browne on Trade Marks is cited as an authority on the point that trade names and trade marks are the same thing. Section 91 opens as follows: "Trade name as contradistinguished from trade mark.—Care should be observed not to confound these two technical terms. Sometimes, in the discussion of principles, or in reasoning from analogy, learned courts fall into error in using these terms convertibly, when the rules applicable to them, respectively, are in their natures mutually antagonistic." The section, as a whole, instead of supporting appellant's proposition, is exactly the reverse.

Gray v. Taper Sleeve Pulley Works, 16 F. R. 442, is cited as being in point on corporations in different States, but an examination of the case shows that this point arose mainly on a question of jurisdiction. The real point in the case is that Farrar, Christian & Co., of Dubuque, Iowa, took for their corporate name, when they became incorporated, the words "Taper Sleeve Pulley Works," which the court held to be Gray's trade mark, and the real point of the case is that one party can not assume or take the trade mark of another party by adopting it as a corporate name; that trade marks can not be appropriated that way. There is no such point arising in this case, for two reasons: First, as we have already seen, the plaintiff in error has no trade mark, and second, that if it has a trade mark in the words "Hazelton Boiler," defendant error has not adopted it as its corporation name.

Under the head of "unfair competition in business," Avery v. Meikle, Price & S. Am. Trade Mark Cases, 753, is cited. This case is not in point upon any of the issues involved in the case at bar. The opinion is a very long one, but the facts

are that the parties were rival manufacturers of plows. Meikle reconstructed his plows so that the parts were interchangeable with Avery's, and applied Avery's marks to the different sizes. This is a regular trade mark case, and the court very properly enjoined Meikle from using Avery's marks.

WATERMAN, J. The plaintiff in error filed its bill in the court below to restrain the defendants from making use of the name " Hazelton Tripod Boiler Company," " Hazelton Boiler " and " Hazelton," or any of them, in their business of manufacturing and selling steam boilers, and particularly steam boilers of the type called " Porcupine Boilers."

The plaintiff contends that certain persons under whom it claims, having been in partnership with Milton W. Hazelton, one of the defendants, in the manufacture, in the city of New York, of steam boilers of a peculiar type, the name Hazelton boiler was accepted by the partnership so engaged, as a name by which the peculiar boiler manufactured by the firm should be known, that name being adopted because of certain patents theretofore taken out by Hazelton for boilers of a type similar to that manufactured by said firm; that after the adoption of said name the peculiar boilers made by said firm were so marked and were advertised and became generally known by said name; so that said name became a trade mark of said boilers, and a trade name belonging to said firm, and the right to use the same and the reputation thereof, a part of the good will of said business and an asset of said firm; that said Hazelton thereafter sold out all his interest in said firm and in and to all of its assets to one John P. Kennedy, and he and the remaining members of said firm have since conveyed all the assets of said firm, including said trade mark, trade name and good will, to the plaintiff, a corporation organized in the State of New York, June 23, 1888, for the purpose of carrying on said business.

The plaintiff contends that the said Hazelton, some three years after he so parted with his interest in said business, came to Chicago and in conjunction with the other defendants, en-

gaged in the business of manufacturing steam boilers of a type similar in appearance to those formerly manufactured by Hazelton and his partners, in New York City, and now made by the plaintiff, and that the defendants advertised the same as the " Hazelton Tripod Boiler," and by such manufacture and by many circulars and advertisements confuse and deceive the public into the belief that the boilers they, the defendants, make in Chicago, are the same as those manufactured by the plaintiff in New York, and thus appropriate to themselves the trade mark, trade name and good will acquired and owned by the plaintiff as aforesaid.

The bill of sale made by Hazelton to John P. Kennedy was sufficient to, and undoubtedly transferred all of Hazelton's interest in whatever the firm of which he was a member then possessed; if it then owned as a trade mark the name " Hazelton Boiler," or possessed the same as a trade name, or had any good will by virtue of the adoption and use of such name, Hazelton relinquished all right to the same; but he did not agree not to engage in the manufacture of boilers under his or any other name. Not having covenanted not to again engage in the manufacture and sale of steam boilers, he had a right so to do; but in said business he could not make use of anything the exclusive property of another.

It is manifest that no person can, merely by adoption or use, acquire an exclusive right to the use of the name of another. A person can not make a trade mark of his own name and thus obtain a monopoly of it which will debar all other persons of the same name from using their own names in their own business. Meneely et al. v. Meneely et al., 62 N. Y. 427; Holloway v. Holloway, 13 Beav. 209; Faber v. Faber, 49 Barb. 357; Carmichel v. Latimer, 11 R. I. 395; Hardy v. Cutter, 3 U. S. Pat. Gaz. 468.

Hazelton is a common name, and when Kennedy and his associates in New York determined to and did call the boiler manufactured by them the " Hazelton Boiler," such adoption and use could not give to them a right to prevent every other person by the name of Hazelton from making boilers and calling them " Hazelton Boilers."

The right which they thus acquired was one in which the public have an interest, viz., that no one should make use of the term "Hazelton Boiler" in such a way as to deceive, or to induce purchasers to buy goods made by one party, under the impression that they were made by another.

A man may not make use of his own name for the purpose of deception, and such fraudulent use will be enjoined. Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Co., 37 Conn. 278; McLean v. Fleming, 96 U. S. 245.

Subject to the restriction that a name shall not be used for a fraudulent purpose, or to a fraudulent end, one who has not contracted not to do so, may use his name in any lawful business, and apply it to any goods of his manufacture.

Doubtless no other corporation bearing the name Hazelton Boiler Company would now be created by the State of New York; and if application were now there made for the incorporation of a company bearing the name of "The Hazelton Tripod Boiler Company," such application might be denied, as being too similar to a name already authorized; but in the case at bar, the defendant corporation was organized and its name sanctioned by the State of Illinois before the creation in the State of New York of the plaintiff. The real question in this case, is, therefore, have the defendants been guilty of fraudulent competition in business, or have they made such use of the plaintiff's name as to deceive, mislead or confuse the mass of purchasers? Some slight confusion has arisen; inquiries in quite a number of instances have been made as to whether the boilers made by the two corporations are the same, and as to whether one house is a branch of the other, but in only one instance does any purchaser appear to have been misled, and that is not one of which the plaintiff can complain.

There is not such a resemblance between the goods manufactured by the two corporations or their circulars or advertisements as would deceive the ordinary mass of purchasers, and it has been held that unless there is a similarity such as would be likely to deceive the ordinary mass of purchasers, an injunction will not be allowed. Partridge v. Menck, 2

Sandf. Ch. 622, 687; Merrimack Mfg. Co. v. Garner et al., 4 E. D. Smith, 387.

It is not shown that the defendants have endeavored or intended to deceive anybody; we do not find that they have sought to palm off their goods as the manufacture of the plaintiff; on the contrary, the plaintiff shows that defendants have issued a circular warning the public not to confound the "Hazelton Tripod Boilers" with the "Hazelton;" and have also issued a statement that it, the "Hazelton Tripod Boiler Company," has no connection with "The Hazelton Boiler Co." of New York.

Plaintiff urges that the issuance of these circulars shows that the defendants think there is danger of confusion, which may be so; but how does such apprehension on the part of the defendants warrant an injunction to deprive them of the use of their name? Why should not an injunction as well go against the plaintiff?

Clearly, for all legitimate purposes, the defendants have the same right to the use of the word Hazelton, that the plaintiff has, unless the plaintiff has such exclusive right to the word Hazelton, either as a trade mark or trade name, that no other person can use it; that, we have already seen, can not be the case. Hazelton may have been actuated by bad motives in engaging, in the city of Chicago, in the manufacture of steam boilers; his letters to the Kennedys are of such character that he admits he is ashamed of them, but the vulgarity and bad spirit displayed in his epistles can not add to the equitable rights of the plaintiff or deprive the defendants of the right to pursue a legitimate business in a legitimate way.

There is some evidence as to what Hazelton, before his sale to Kennedy, said as to his intentions about business, but all previous conversations were merged in the written instrument of sale; what that gives, Kennedy obtained; no more, no less

We see no reason for refusing to defendants the right to use the name the State of Illinois has given the defendant corporation.

We do not find any sufficient evidence that such name has been used for any fraudulent purpose, or with any intent to

deceive or mislead the public, or that there has been, or is likely to be, such confusion as would deceive the ordinary mass of purchasers, or to call for the interference of a court of equity. The decree of the court below is therefore approved and affirmed.

*Decree affirmed.*