64b 477
66  575

## N. K. Fairbank Company v. Swift & Company.

1. TRADE-MARKS.—*The Use of, When to be Enjoined.*—A man may not use his own name for the purpose of deception, and such fraudulent use will be enjoined.    Fair competition in business is legitimate, and promotes the public good, but an unfair appropriation of another's business by using his name or trade-mark, or an imitation thereof, calcu-

lated to deceive the public, is not permissible and will be enjoined by a court of equity.

2. SAME—*Degree of Resemblance.*—What degree of resemblance is necessary in order to warrant the issuing of an injunction to prevent the fraudalent use of resemblances to trade-marks, or to stop unfair competition in business, must necessarily always continue to be a question which can not be settled by rules applicable to all cases.

3. SAME—*Where a Court Will not Interfere.*—While the court is not bound to interfere where ordinary attention will enable the purchasers to discriminate between the trade-mark used on the goods manufactured by different parties, nevertheless the character of the article, the use to which it is put, and the kind of people who are likely to ask for it, as well as the manner in which it is probable it will be ordered, must not be lost sight of.

4. INJUNCTION—*Unfair Competition.*—All practices between rivals in business which tend to engender unfair competition are odious, and will be suppressed by injunction. No man will be permitted to make use of signs or tokens which serve to confuse the identity of his business with that of another, or to mislead the public, and thus divert custom from his competitor to himself.

5. SAME—" *Cottolene* " *and* " *cotosuet.*"—The use of the word " cotosuet " as a trade-mark is not an infringement upon the right to use the word "cottolene."

**Bill for Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 1, 1896.

ROWLAND COX, OLIVER & MECARTNEY, and JOHN S. BROWN, attorneys for appellant.

To determine whether or not a label is fraudulent, the controlling consideration is the effect which its statements have upon the public. The circumstance that the statements may be, in the abstract, untrue is not in itself material. Thus, the continued use by a manufacturer of the name of his predecessor in business after the death of his predecessor as indicating the manufacturer of the goods, has been justified in many cases. Kidd v. Johnson, 100 U. S. 618; Hoxie v. Chaney, 143 Mass. 592; Russia Cement Co. v. Le Page, 147 Mass. 206; Feder v. Benkert, 70 Fed. Rep. 613; Sebastian on Trade-marks (3d Ed.), 232; Meriden Britannia Co. v. Parker, 39 Conn. 450.

Fraud can not be presumed. The question is not what was the technical, legal effect of all the transfers and changes in the business of the various firms and corporations, but what the complainant believed, and had a right to believe, regarding them. If its officers asserted only what they honestly believed to be true, with no intent to mislead the public, there is no fraud. Even though the complainant took too sanguine a view as to its derivative rights, it can not be convicted of fraud if it honestly believed that it possessed them." 67 Fed. Rep. 899.

It was said by the Court of Appeals of New York: "Every trade-mark case is a law unto itself" (138 N. Y. 252). By the Supreme Judicial Court of Massachusetts: "Every case of trade-marks depends very much upon its own circumstances" (122 Mass. 139). By the Supreme Court of Iowa (70 Iowa 481), referring to the cases: "They simply indicate the path which may be followed to advantage." In many other cases it is said that the courts will deal with each particular controversy as it arises, applying the accepted doctrines to the facts as they are made to appear.

Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their enclosing packages, in the extent of their advertising, and in the employment of agents, but they have no right, by imitative devices, to beguile the public into buying their wares under the impression that they are buying those of their rivals. Coats v. Merrick Thread Co., 149 U. S. 566.

The question whether the resemblance between the designs upon the complainants' and the defendants' spools of thread was such as to indicate an unlawful intent was determined by comparison of the two designs. In the case at bar an intention on the part of the defendants to impose upon the public by means of the dress in which they put up their manufacture is found proved. A comparison of the two articles shows that the imposition and injury to the complainants is a natural result of putting upon the market de-

fendants' article, dressed up as they dress it.  Von Mumm
v. Frash, 56 Fed. Rep. 837.

The court must necessarily determine on the evidence and
on an examination of the instrumentalities which have been
used by the defendant whether their use is inequitable and
calculated to produce confusion and mistake.  Munro v.
Tousey, 129 N. Y. 38; Fischer v. Blank, 138 N. Y. 244; T.
A. Vulcan v. Meyers, 139 N. Y. 364; Von Mumm v. Frash,
56 Fed. Rep. 830; Coats v. Merrick Thread Co., 149 U. S.
562; Reddaway v. Bentham Co., L. R., 1892, 2 Q. B. R.
640; Amoskeag Mfg. Co. v. Spear, 2 Sand. (S. C.) 599.

An injunction ought to be granted whenever the design
of a person who imitates a trade-mark, be his design appa-
rent or proved, is to impose his own goods upon the public
as those of the owner of the mark, and the imitation is such
that the success of the design is a probable or even possible
consequence.

This language was used in Amoskeag Man. Co. v. Spear,
2 Sand. S. C. 599, a case which has been repeatedly referred
to by the Supreme Court of the United States and other
courts, 54 Illinois 443, as the leading American adjudica-
tion.   See 13 Wall. 320; 96 U. S. 255; 128 Ib. 524; 138 Ib.
547; see also Von Mumm v. Frash, 56 Fed. Rep. 837, Co-op-
erative Society v. Co-operative Society, 8 British Patent,
Design and Trade-mark Cases, 429.

It is the liability to deception which the remedy may be
invoked to prevent.   It is sufficient if injury to the plaint-
iff's business is threatened or imminent to authorize the
court to intervene to prevent its occurrence.   Taendsticks-
fabriks, etc., v. Myers, 139 N. Y. 367.

The fact that careful buyers, who scrutinize trade-marks
carefully, are not deceived, does not materially affect the
question.   It only shows that the injury is less, not that
there is no injury.   No amount of diligence on the part of
the petitioners will guard against this injury.   An injunc-
tion is their only adequate relief.   Britannia Co. v. Parker,
39 Conn. 460.

We must not lose sight of the character of the article, the

use to which it is put, the kind of people who ask for it, and the manner in which it is ordered. Very broad scene-painting will deceive an ignorant, thoughtless or credulous domestic looking for an article in common daily use and of no particular interest to her personally. Morgan's Sons Co. v. Troxell, 23 Hun 632.

If the false is only colorably different from the true; if the resemblance is such as to deceive a purchaser of ordinary caution; or if it is calculated to deceive the careless and unwary, and thus to injure the sale of the goods of the proprietor of the trade mark, the injured party is entitled to relief. Coleman v. Crump, 70 N. Y. 573; see also Singer Co. v. Loog, 8 App. Cas. 18; Read v. Richardson, 45 L. T. R., N. S. 54; Brown v. Mercer, 37 N. Y. Sup. Ct. 235; Lever v. Goodwin, 36 Ch. D. 1; Celluloid Co. v. Cellonite Co., 32 Fed. Rep. 1001.

Cottolene is a proper and valid trade mark. Although it may suggest cotton seed oil, it is not sufficiently descriptive to render it invalid as a trade-mark, under the recent decisions. The rule that names suggestive of the nature or composition of articles may be valid trade-marks if not too accurately descriptive of their character or quality, has been applied in Burnett v. Phalon, 9 Bosw. 192, to the use of the word "Cocoaine;" in Manufacturing Co. v. Ludeling, 22 Fed. 823, to "Maizena;" in Leonard v. Lubricator, 38 Fed. 922, to "Valvoline;" in Battle v. Finlay, 45 Fed. 796, to "Bromidia;" Keasbey v. Chemical Works, 37 N. E. Rep. 476, N. K. Fairbank Co. v. Central Lard Co. 64 Fed. Rep. 134.

In numerous cases the use of misleading signs has been prohibited. Peterson v. Humphrey, 4 Abb. R. R. 394; Colton v. Thomas, 2 Brews. 308. See also Prince Albert v. Strange, 2 De G. & S. M. 652; Franks v. Weaver, 8 L. T. 510; Thorley's Cattle Food Co. v. Massan, 14 Ch. Div. 763; Williams v. Johnson, 2 Bos. 1; Clark v. Clark, 25 Barb. 76.

Also the use of forms and styles of packages which, in the abstract, were *publici juris*. Sawyer v. Horn, 1 Fed. Rep. 24; Fischer v. Blank, 139 N. Y. 252; McLean v. Fleming, 99 U. S. 252;

And the use of vehicles or omnibuses painted to simulate those used by others. Knott v. Morgan,.2 Keen 213; Marsh v. Billings, 7 Cush. 322.

And also the use of misleading flags by a real estate auctioneer. Johnson v. Hitchcock, N. Y. D. R., Nov. 24, 1888.

In a case relating to unfair competition in business a chancellor has plenary powers, being governed only by his own enlightened intelligence and conscience. He may direct and control every part and incident of the defendant's conduct, and enjoin any and every act which is of doubtful purpose and effect. Law. Man. Co. v. Tenn. Man. Co., 138 U. S. 537; Thompson v. Montgomery, 41 Ch. Div. 35; Orr, Ewing & Co. v. Johnston & Co., 7 App. Cas. 219; Koehler v. Sanders, 122 N. Y. 74; Meyer v. Bull Medicine Co., 58 Fed. Rep. 884; Pillsbury v. Pillsbury, Washburn, etc., 64 Ib. 841.

It was contended that, " Cotosuet " *is an imitation of* " Cottolene " *and its use should be enjoined.*

There are not a few reasons of persuasive force why it should be held that " Cotosuet " so closely resembles " Cottolene " that there is danger of misconception, mistake and fraudulent substitution.

There is no doubt that the differences between the two words are not such as to compel a conclusion in defendant's favor. On the contrary, the resemblances are not less significant than those which have been held to be sufficient in many instances.

The difference between " Cottolene" and " Cotosuet" is not such as to justify the defendant's choice.

In Burnett v. Phalon, 3 Keys 594, the two words were: Cocaine and Cocoine. In Rowley v. Houghton, 2 Brewst. 303, the two words were: Hero and Heroine. In Wamsutta Mills v. Allen, Cox's Manual 660, the two words were: Wamsutta and Wamyesta. In Glencove Mfg. Co. v. Ludeling Mfg. Co., 22 Fed. Rep. 823, the two words were: Maizena and Maizharina. In Celluloid Co. v. Cellonite Co., 32 Fed. Rep. 94, the two words were: Celluloid and Cellonite. In Enoch Morgan's Sons Co. v. Edler, Cox's Manual 713, the two words

were; Sapolio and Saponite. In Estes v. Leslie, 29 Fed. Rep. 91, the two words were: Chatter-Box and Chatter Book. In each of the above mentioned instances the use of the simulated word was restrained.

Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. 32 Fed. Rep. 97.

A very recent case involved, Momaja and Mojava. American Grocery Co. v. Bennett, Sloan & Co., 68 Fed. Rep. 539.

In that case the court said : "In the light of decisions which find infringing resemblances between 'Cottoleo' and 'Cottolene' between 'Cellonite' and 'Celluloid,' between 'Wamyesta' and 'Wamsutta,'" between 'Maizharina' and Maizena,' between 'Saponite' and 'Sapolio,' (see citations in 64 Fed. Rep. 135), there is little difficulty in disposing of the case."

BOND, ADAMS, PICKARD & JACKSON, attorneys for appellee.

The appellant has no right in the alleged trade-marks, inasmuch as it appears from the record that such marks are at all times used solely upon the product of another person; in other words, that a right in the abstract can not be had in any trade-mark.

The primary object and purpose of a trade-mark is to indicate origin. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 131 U. S. 537, 546; Columbia Mill Co. v. Alcorn, 150 U. S. 463; Canal Co. v. Clark, 13 Wall. 311 ; Manhattan Medicine Co. v. Wood, 108 U. S. 218.

The primary and the sole object of the trade-mark is to distinguish the goods as being a particular manufacture, or as belonging to a particular party. Moorman et al. v. Hoge et al., 17 Fed. Cases 715, 718.

There is no right in the abstract to a trade-mark; Browne on Trade-marks, Sec. 66, Sec. 301, Sec. 676.

A false notice as to the manufacturer or place of manufacture is fatal. Manhattan Medicine Co. v. Wood, 108 U. S. 218; Joseph v. Mockowski, 96 Cal. 518; California Fig

Syrup Co. v. Putnam, 66 Fed. Rep. 750; Prince Mfg. Co.
v. Prince's Metallic Paint Co. 135 N. Y. 37; Koehler v.
Sanders, 122 N. Y. 76; Columbia Mill Co. v. Alcorn, 150 U.
S. 463; Conell v. Reed, 11 Mass. 477; Browne on Trade-
marks, Sec 80; Siegert v. Abbott, 61 Md. 276.

That this defense is one that need not be specifically
pleaded, but will be enforced by the court to prevent fraud
upon the public. See Simmons Med. Co. v. Mansfield Drug
Co., 23 S. W. Rep. 169.

The appellee does not infringe either of the alleged
trade-marks, even though the same could be held valid. By
the confused use of such marks they are uncertain and
void.

Trade-marks are addressed to ordinary purchasers or ob-
servers—to those who give ordinary attention. Columbia
Mill Co. v. Alcorn, 150 U. S. 467; Popham v. Cole, 66 N.
Y. 69; Browne on Trade-marks (2d Ed.), Sec. 385, p. 384;
Ball v. Siegel, 116 Ill. 137, 146; Coats v. Merrick Thread
Co. 149 U. S. 572; Falkinburg v. Lucy, reported in Cox's
American Trade-mark Cases, No. 448, p. 461.

In a clear case of actual deception caused by a defendant's
mark there is not much need of testimony. In a doubtful
case testimony is necessary. Celluloid Co. v. Read, 47 Fed.
Rep. 716; Ball v. Siegel, 116 Ill. 146; Legget & Myers Co.
v. Finzer, 128 U. S. 184.

As to the consideration to be given Patent Office regis-
trations of two trade-marks, when suit is brought to restrain
the use of one of such marks as being an infringement of
the other, see Browne on Trade-marks (2d Ed.), 345; Daus-
man & Drummond Tobacco Co. v. Ruffner et al., 17 Fed.
Cases 718.

Competition when conducted fairly and with no intent
to deceive gives no ground for complaint. It is to be en-
couraged rather than condemned. Hazelton Boiler Co. v.
Hazelton Tripod Boiler Co., 142 Ill. 509; Coats v. Merrick
Thread Co., 149 U. S. 566; Brown Chemical Co. v. Meyer,
139 U. S. 544.

A trade-mark must be clear, well defined, certain. Bo-

lander v. Peterson, 136 Ill. 215; Candee v. Deere, 54 Ill. 349, 456; Browne on Trade-marks, Sec. 143, p. 162 of 2d Ed., Sec. 89, p. 101.

That a general type or " concept " can not be exclusively appropriated, see Browne on Trade-marks, Sec. 89d.

No one can have more than one trade mark at one time for the same goods.   Candee v. Deere, 54 Ill. 456.

The trade-mark " must not be deviated from at the suggestion of whim or caprice."   Candee v. Deere, 54 Ill. 456.

The court is not bound to interfere where ordinary attention will enable purchasers to discriminate between the trade-marks used by different parties.  Ball v. Siegel, 116 Ill. 137, 146; Coats v. Merrick Thread Co., 149 U. S. 562, 573.

While no law is needed to support the proposition that complainant can not be allowed to take advantage of its own wrong, we cite here some cases relating to advertisements, signs, packages, etc., as such matters are largely relied upon by appellant.

Without testimony, no inference of any fraudulent intent can be drawn from the fact that packages are similar in shape, structure, etc.  Ball v. Siegel, 116 Ill. 144; Morgan Sons & Co. v. Troxell, 89 N. Y. 292.

The object of using a barrel, box, or other package, is to contain, carry, protect and preserve the goods, or for their convenient handling; and form of some kind and dimensions, are essential in a box, barrel or package, without which it can have no existence.   But the size or shape of the barrel, box or package can scarcely be considered a mark, nor can that be the sense in which the terms " form " or " device " are used when employed as a definition of a mark, used for purposes of trade.   So general is the idea that the symbol, figure, letter, form or device, used for a trademark, must be a mark, impressed, cut, engraved, stamped, cast upon, or in some way wrapped around, or appended to, the article, or the package, as something independent of the article itself, or the package used to contain it, that it is

carried into the statutes of some States, where it is, doubtless only intended to adopt the common law definition. Moorman v. Hoge, 17 Fed. Cas. 718.

That the word "Cottolene" can not be appropriated as a trade-mark, for the reason that it is the proper name of the goods.

Generic or descriptive words can not be appropriated as trade-marks any more than common or true names. Canal Co. v. Clark, 13 Wall. 311, 323; Burton v. Stratton, 12 Fed. Rep. 700; Wilcox & Gibbs Co. v. Gibbens F. Co., 17 Fed. Rep. 623; Colgan v. Danheiser, 35 Fed. Rep. 150; Rumford Chem. Works v. Muth, 35 Fed. Rep. 524; Clotworthy v. Schepp, 42 Fed. Rep. 62; Brown Chem. Works v. Stearns Co., 37 Fed. Rep. 360.

A court takes notice, as a matter of law, of the meaning of words. Royal Baking Powder Co. v. Raymond, 70 Fed. Rep. 382.

"In a clear case of intentional or actual deception, there is not much need of testimony as to the possibility that purchasers would be misled. In a doubtful case testimony is valuable." Celluloid Co. v. Reed, 47 Fed. Rep. 712, 716. See also note 1, p. 434, of Rowland Cox's Manual of Trademark Cases, second edition.

The law is well settled that no circular, price-list or advertisement, no matter how frequently repeated, can constitute a trade-mark, and it is only in that way appellees have used, and appellants also using it as a generic term, which they had a clear right to do. Candee, Swan & Co. v. Deere & Co., 54 Ill. 439, 462.

It is well settled, moreover, that directions, advertisement notices, etc., constitute no part of a trade-mark. Ball et al. v. Siegel et al., 116 Ill. 143.

Property in a trade-mark, or rather in the use of a trade-mark or name, has very little analogy to that which exists in copyrights, or in patents for inventions. The office of a trade-mark is to point out distinctively the origin or ownership of the article to which it is affixed, or, in other words, to give notice who was the producer. Manhattan Medicine

Co. v. Wood, 108 U. S. 218; Canal Co. v. Clark, 13 Wall. 311; Joseph v. Mackowski, 96 Calif. 518.

" A person who comes into a court of equity for an injunction in a case of this kind must come with clean hands; he can not be granted relief upon a claim to the exclusive use of a trade-mark which contains a false representation calculated to deceive the public as to the manufacturer of the article and the place where it is manufactured."

A number of cases, including the Manhattan Medicine Company case, are cited in the above case as supporting the doctrine laid down. See also California Fig Syrup Co. v. Putnam, 66 Fed. Rep. 750; Prince Mfg. Co. v. Prince's Metallic Paint Co., 135 N. Y. Rep. 37; Koehler v. Sanders, 122 N. Y. 76.

In Siegert v. Abbott, 61 Maryland 276, the court said: "It is a general rule of law, in cases of this kind, that courts of equity will not interfere by injunction when there is any lack of truth in the plaintiff's case; that is, when there is any misrepresentation on his trade-mark or label. Browne on Trade-marks, Sec. 71 and Sec. 74 *et seq.* "

In the recent case of Columbia Mill Co. v. Alcorn, 150 U. S., the court, p. 463, after citing numerous cases, says: " These cases establish the following general propositions : (1) That to acquire the right to the exclusive use of a name, device or symbol, as a trade-mark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or that such trade-mark must point distinctively, either by itself or by association, to the origin, manufacture, or ownership of the article on which it is stamped. It must be designed, as its primary object and purpose, to indicate the owner or purchaser of the commodity, and to distinguish it from like articles manufactured by others. (2) That if the device, mark, or symbol was adopted or placed upon the article for the purpose of identifying its class, grade, style or quality, or for any purpose other than a reference to or indication of its ownership, it can not be sustained as a valid trade-mark."

The rule has also been stated as follows: "Where no actual or constructive fraud is shown and no intention to harmfully mislead purchasers manifested by the use of instrumentalities that would naturally tend to that result, the rule does not apply, but a false representation as to the place of origin of the article is fatal." Browne on Trademarks, Sec. 71, p. 80; Manhattan Medicine Co. v. Wood, 108 U. S. 218; Conell v. Reed, 11 Mass. 477, and cases cited.

That an abstract right to a trade-mark can not exist is well settled. Browne on Trade-marks, Sec. 676, expresses this idea as follows:

"We have seen heretofore that there can not be property in an abstract symbol, whether that be an original design, or word, or emblem; for it is only an index to a certain article of merchandise. A trade-mark ceases to be property the moment that its exclusive use ceases, and it resumes its ideal state. Its conjunction with a corporeal thing is like the union of soul and body."

Mr. Justice Waterman delivered the opinion of the Court.

This is an appeal from the decree dismissing a bill filed by the N. K. Fairbank Company, a corporation organized under the laws of the State of Illinois, against Swift & Company, also a corporation organized under the laws of this State. The suit was brought to restrain an alleged infringement of two trade-marks, which are the property of appellant, and also to protect the appellant against an alleged unfair competition in business.

It appears from the evidence that the contending parties each manufacture very similar substances; that the appellant was the first to make practicable for common use in cooking, a preparation made from cotton seed oil, for which preparation it coined the name "cottolene," and that to popularize the use of the same, and to make the public acquainted therewith, it has for a number of years expended in advertising very large sums of money—as one witness testified, as much as $100,000 per annum; that the manu-

facture carried on by the defendant of cotton seed oil for cooking purposes, was by it begun some time after the complainant had engaged in such business, and after complainant had obtained its trade-marks and introduced its manufacture to the public under the name of "cottolene;" that the defendant coined and has made use of the word "cotosuet" to designate its product; that the principal ingredient of each of the preparations is cotton seed oil, a small quantity of beef suet stearine being added thereto.

The complainant charged that the defendant, "for the purpose of creating upon the trade and public the false impression that said defendant's product is in reality the product of complainant, or that the defendant's product is the same as that of the complainant and does not differ therefrom as the complex product of one manufacturer commonly differs from a similar product of the same general class made by another manufacturer and for the purpose of deceiving or enabling dealers to deceive and impose upon persons, and especially the careless and uninformed and those ignorant of the English language who were accustomed or disposed to buy for trade or consumption the cottolene made by the complainant, by passing off and imposing upon such persons the product of defendant in lieu of that of complainant, and for the purpose of trespassing upon the good will of the public towards complainant, and unlawfully 'and wrongfully securing to defendant trade which of right belongs to complainant, defendant has made and is now using upon its said goods false and fraudulent marks, signs and tokens," setting forth a particular description of such alleged false and fraudulent marks, signs and tokens, among which is that the word "cotosuet" is so used by the defendant.

No person is entitled to represent his wares as being the goods of another man, or articles of his manufacture as having been made by another, and no person is by the law permitted to use any mark, sign, symbol, name, device or other means, whereby he makes a false representation, or deceives as to his own goods, or as to the goods of another,

or whereby, without himself making a false representation
to a buyer who purchases from him, he enables such buyer
to tell a lie or to make an untrue representation to some-
body else who is the ultimate customer. Nor is it a defense
to an action, the gist of which is a charge of deception, to
reply that the words uttered by the defendant were the
literal truth, for the truth may be stated in a way likely to,
and that does, deceive. What is required is that a party
shall not conduct his business so that by what he says or
does, he deceives customers to their injury, or to that of a
competitor.

A man may not use his own name for the purpose of
deception, and such fraudulent use will be enjoined. Fair
competition in business is legitimate and promotes the pub-
lic good, but an unfair appropriation of another's business
by using his name or trade-mark, or an imitation thereof
calculated to deceive the public, is not permissible and will
be enjoined by a court of equity. Hazleton Boiler Co. v.
Hazleton Tripod Boiler Co., 40 Ill. App. 430; Same, 142
Ill. p. 509; Reddaway v. Banhan, House of Lords, opinion
filed March 26, 1896; Celluloid Co. v. Cellonite Co., 32 Fed.
Rep. 97.

As has frequently been said, it is not often the case that
one intending to palm off his goods as those of another,
copies entirely the marks, signs, brands or trade-marks of
his rival; what he does is to imitate, more or less closely, in
such a way as to deceive the unwary or ordinary observer.

What degree of resemblance is necessary in order to
warrant the issuing of an injunction to prevent the fraudu-
lent use of trade-marks, or to prevent the fraudulent use of
resemblances to trade-marks, or to stop unfair competition
in business, must necessarily always continue to be a ques-
tion which can not be settled by rules applicable to all cases.

While the court is not bound to interfere where ordinary
attention will enable the purchasers to discriminate between
the trade-marks used on the goods manufactured by differ-
ent parties, nevertheless, the character of the article, the
use to which it is put, and the kind of people who are likely

to ask for it, as well as the manner in which it is probable it will be ordered, must not be lost sight of. Popham v. Cole, 66 N. Y. 69; 23 Am. Rep. 22, and cases there cited; Morgan's Sons Co. v. Troxell, 89 N. Y. 292; 42 Am. Rep. 294; Manufacturing Co. v. Francis, 101 U. S. 51; Ball v. Siegel, 116 Ill. 137; Reed v. Richardson, 45 L. T. (N. S.) 54; Beard v. Turner, 13 Id. 736; Leidesdorf v. Flint, 7 N. W. Rep. 174; Eggers v. Heink, 63 Cal. 445; Morgan's Sons Co. v. Troxell, 23 Hun 632; Ewing v. Johnston, L. R. 18, Ch. Div. 612; Apollonaris Co. v. Sherer, 22 Fed. Rep. 22.

Applying these principles to the case at bar, we are, from an examination of the evidence, to determine whether defendant has conducted itself so that its goods are represented or made to appear as the goods of the complainant, and whether the defendant, without making a direct false representation to any of its customers, has so conducted itself as to enable such customers to make a false representation to somebody else who is to be the ultimate customer. Has it been guilty of unfair competition in business?

All practices between rivals in business which tend to engender unfair competition, are odious, and will be suppressed by injunction. No man will be permitted to make use of signs or tokens which serve to confuse the identity of his business with that of another, or to mislead the public, and thus divert custom from his competitor to himself.

It is urged that the defendant, knowing the great success which had attended the endeavor to sell the complainant's product under the name "cottolene," deliberately chose as a designation for its, the defendant's, product, the word "cotosuet," intending thereby to confuse the public as to the identity of the product of the complainant and that of the defendant, and that the use of the word "cotosuet" has had such effect.

We do not agree with what has been said in one case, that the use of a sign or token so similar to that of a rival as that there is a possibility that confusion may arise therefrom, is sufficient to call for the interposition of a court of equity. Confusion is possible under almost any circumstances. The

question is not what is possible, but what is probable. The word "cottolene," from its similarity of formation to the words gasolene, naphthalene, benzolene, petrolene, and other chemical names, indicates an article derived substantially entirely from a product of the cotton plant; while the word "cotosuet" indicates a substance derived from a product of the cotton plant and suet; and we do not think that an ordinary purchaser of such articles would be misled by the term "cotosuet" into purchasing it, thinking he was obtaining what is known as "cottolene." We can well understand that a person who desired to obtain, for cooking purposes, a vegetable shortening, might easily be induced by a grocer to accept "cotosuet," "cookene," "golden suet," "suetene," "cornene" "clarelene," "golden shortening," or "supreme shortening" — names applied by other manufacturers to their respective products of articles similar to "cottolene"—although such purchaser had distinctly asked for "cottolene." It is well known that retail vendors can, to the ordinary purchaser, sell several similar articles, that which they, as such vendors, endeavor to dispose of, and that if the articles are substantially alike, the seller will hear no "kicking," as, in the present case, one witness testified he heard none when he gave "cotosuet" to people who inquired for "cottolene." There are doubtless in this country millions of people to whom, if Seipp's beer were given when they called for Blatz's, or *vice versa*, would make no complaint.

To a person of ordinary observation and attention, the distinction between "cottolene" and "cotosuet" is obvious. Only a person of more than average heedlessness and carelessness would mistake one for the other.

We have examined a large number of exhibits in the way of pictures, signs and devices, employed respectively by appellant and appellee to advertise and sell their respective goods, and do not find, except in one instance, any such resemblance as would deceive a person of ordinary attention — having reference in what we say to the class of persons by whom these respective products are likely to be inquired

for and bought, and the way and manner in which they are sold — nor do we find any evidence that the defendant has intended to palm off its goods as the product of the complainant; on the contrary, we think in every instance, the brands, marks and advertisements of "cotosuet" contain a plain and easily recognizable statement; indeed, one by which it is substantially impossible for an observer to fail to see that the "cotosuet" advertised or branded is made only by Swift & Company, the defendant.

One of the trade-marks of the complainant is that of the head of a steer surrounded by cotton bolls. The defendant has made use of the head of a steer surrounded by cotton bolls. The steers do not look alike; the dissimilarity between the two heads is very apparent; yet as the picture of the steer's head, made by the complainant, has surrounding it the words "Cottolene, the new shortening, made by The N. K. Fairbank Company, Chicago, U. S. A.," and the representation of a steer's head used by the defendant has about it the words, "Cotosuet, the new shortening, made only by Swift & Company, Chicago, U. S. A.," we are of the opinion that there is such similarity between these two devices, cards or advertisements, as that there is a tendency to deceive, and while in the very great amount of advertising matter put forth by the respective parties, it is not strange that as to more or less of the same there should be, without any intention to deceive, considerable similarity in the devices used by one to those employed by the other, we think, without reference to whether the device of the steer's head surrounded by cotton bolls used by the defendant was without the intention to make something similar to that of the complainant, made use of, yet it is a thing it ought not to do; and this, we understand, the defendant concedes, and insists that it has altogether ceased to use such device; and there being no evidence to the contrary of this statement, we do not think that it is necessary an injunction should go as to the use of such device by the defendant.

As to the use of the word "cotosuet," and devices other

than the steer's head, before mentioned, employed by the defendant, of which complaint is made, we do not put our affirmance of the decree of the Circuit Court upon the ground that careful buyers will not be deceived, but that persons of ordinary attention, such as will be likely to ask for and desire to buy complainant's product, will not be deceived. The complainant asks that an answer may be made to this question : " Why did the defendant coin and use the simulated word ' cotosuet ? ' " The officers and agents of the defendant have testified how they came to make use of that word, and there is nothing to show that what they said in this regard is not true. No court, rolling back the record of time, can open, read and know the real intent and purpose and the actual motive governing the action of the defendant in coining the word " cotosuet " as a name for its product. Under the testimony and the circumstances of this case, it seems to us it made use of such word because, as clearly as any short word that could be created, it briefly designated the materials from which the defendant's product is made, and that it was not chosen for the purpose of misleading the public or defrauding the complainant out of anything to which it was entitled. We do not find that the defendant has made use of its carts and wagons of complainant's registered and well known trade mark or devices similar thereto, to such an extent or in such a manner as to cast suspicion upon its purposes, or show that it intended to perpetrate a fraud either upon the public or the complainant; and it seems to us that in printing on its boxes, cards, factory, posters, and elsewhere, the sentence, " Cotosuet, the new shortening, made only by Swift & Co." it meant to proclaim to the world that " cotosuet " was a new shortening made only by it, the defendant. The complainant admits that more than a dozen manufacturers are making in large quantities, as does it, a new shortening, the principal ingredient of which is cotton seed oil. Notwithstanding this, the complainant continues to publish as an advertisement the lines, " Cottolene, the new shortening, made by the N. K. Fairbank Co." We do not understand that by this the complainant means to declare that it is the only

manufacturer of a new shortening, or that the words "the new shortening," can only truthfully be applied to its product, but that by such advertisement it proclaims that "cottolene" is the new shortening by it made.   The complainant does not claim that the words, "the new shortening," are its trade-mark, or that it has acquired any right to the exclusive use of the same; its insistence merely is, that those words having been used by it in connection with its advertisement of "cottolene," those words used by the defendant in connection with its advertisement of "cotosuet" tend to deceive the unwary.   So it may be said, do the words "Chicago, U. S. A.," employed by both complainant and defendant, have a tendency to confuse.   Doubtless, there would be less danger of confusion if complainant's product was made only in Chicago, and the defendant's in St. Louis, and the advertisements of the respective parties respectively so stated.   But as we have before stated, we are not concerned in this case with possible confusion, or with mistakes that may be made by persons of more than average carelessness and heedlessness, but with confusion likely to arise in the mind of the ordinary observer of the class and condition of those whom it is probable will desire to purchase "cottolene," under the circumstances and in the manner in which it is offered for sale.   As to such circumstances and such manner, we do not think the complainant is being, or will be, unduly prejudiced by anything the defendant is doing.   The court below, therefore, in our judgment, properly refused to enjoin the defendant, as prayed by the complainant, and its decree is affirmed.