Hershel California Fruit Products Company, Appellee, v. Contadina Brokerage and Distributing Company et al., Appellants.

Gen. No. 38,997.

Opinion filed October 20, 1937.
Rehearing denied November 3, 1937. Additional opinion filed November 4, 1937.

FREEMAN & FREEMAN, of Chicago, for appellants; IRVING GOODMAN, of Chicago, of counsel.

BARNETT & TRUMAN, of Chicago, for appellee; OTTO R. BARNETT and LAWRENCE T. BARNETT, both of Chicago, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

Defendants appeal from a decree and order entered in the superior court of Cook county on April 27, 1936, in an action by which plaintiff seeks to enjoin the use by defendants of certain trade-marks and names. In this decree it is ordered: "That defendants, and each of them, be perpetually enjoined from distributing, selling, putting out or in any way using any label on tomato paste bearing the name 'Contadina Brokerage & Distributing Co.' or bearing the word 'Contadina,' either alone or in any association with other words."

The prayer of the complaint filed in the cause is that defendants be enjoined temporarily and permanently from distributing, selling, putting out, or in any way using any label on tomato paste bearing the name "Contadina," from further using on cans of tomato paste a certain label described in the bill of complaint, or any other label bearing such close resemblance of defendants' label so as to mislead the public, and that defendants be required to account for and pay over to plaintiff all profits accrued and received by the defendants during a period stated, because of the use of the label complained of, together with any damage suffered by plaintiff by such use. Defendants deny the charges in the bill, allege that plaintiffs consented to the use of the trade-mark and name, and in a counterclaim pray that the plaintiff be required to account

to them in the sum of $10,000, based on plaintiff's refusal to deliver to defendants certain tomato paste, as agreed. Issues were joined in the superior court on the bill of complaint, answer and counterclaim of defendants, and on October 31, 1936, the matter was referred to a master in chancery to take testimony and report his conclusions of law and fact. After hearing a great amount of testimony, the master found that from long established use, the plaintiff had the exclusive right to the name "Contadina" as a trade-mark appearing on packages containing tomato paste, and had the further exclusive right to the use of a certain label for certain paste described in the complaint; that by using a certain other label described in the complaint, defendants had used a label so similar to plaintiff's as to constitute unfair competition; that by the use of the word "Contadina" on defendants' label, they had violated plaintiff's trade-mark rights. The master recommended that an injunction be issued restraining the defendants from continuing the use of the label and the use of the word "Contadina," and that a decree be entered in accordance with the prayer of the complaint and the findings of the report. The master also found that neither plaintiff nor defendants are entitled to an accounting. Upon a hearing before one of the judges of the superior court, on March 11, 1936, upon exceptions filed by both the plaintiff and defendants to the master's report, the court ordered that both plaintiff's and defendants' exceptions be overruled, that the master's report be confirmed, and that a decree be prepared and entered in accordance therewith. Thereafter, in the absence of the judge who entered the order referred to, on April 27, 1936, and after a further hearing, the decree appealed from was entered.

The record indicates that prior to the 31st of August, 1920, through various mesne conveyances, the

plaintiff acquired title to and the right to the use of the word ''Contadina,'' as a trade name, in and about the business of manufacturing, canning and vending tomato paste, which word as a trade-mark had theretofore been registered in the United States patent office as trade mark No. 123957, and that for a period of time subsequent to the acquisition of such trade name, the defendants, the Contadina Brokerage & Distributing Company, acted as broker and agent for plaintiff company in the sale of this product. Subsequently, plaintiff and defendants ceased these business relations, and defendant engaged in the business of manufacturing and selling tomato paste. In connection with the manufacture and sale of tomato paste, the plaintiff had theretofore adopted a label which shows at the top thereof the words ''Tomato Paste,'' and then a cultivated field of tomato plants in regular rows, with a female figure in the foreground, wearing a red dress with a blue apron and carrying a basket of tomatoes with the words across the sky above the head of the female figure, ''Salsa di Pomidoro,'' and below those words, the words ''Naples Style,'' and then at the bottom, below the female figure, the words, ''Contadina Brand,'' and in smaller letters, below, ''net weight 6 oz.'' After defendant had ceased doing business with plaintiff and after it began the business of manufacturing and distributing tomato paste, the defendant adopted a label, which bears, at the top thereof, the word ''Signorina'' in large letters, and below that in smaller letters the words ''product—Brand—of U. S. A.,'' and also shows a cultivated field of tomatoes with a female figure in the foreground, wearing a red waist and blue skirt and holding aloft a bunch of tomatoes, with the words ''Salsa di Pomidoro'' across the sky, and the words ''Naples Style'' above the words, and having across the bottom of the label, below the female figure, the words, ''Distributed by,'' and then the word

"Contadina" in somewhat larger letters, with the remainder of the name, "Brokerage and Distributing Co.," continued around on the reverse side of the label. Another label used by the defendant in connection with its sale and distribution of tomato paste, appears in the record, which contains the words, "Packed in California for . . . Contadina Brokerage & Distributing Co.," an examination of which shows that there is no material difference between this label and the one hereinbefore described. As already suggested, the master found in his report, which was confirmed by the court, that "from long established use, the plaintiff had the exclusive right to the name Contadina as a trade-mark appearing on packages containing tomato paste, and had the further exclusive right to the use of the label for certain paste described in the complaint," and the injunction order from which this appeal is being prosecuted, as already suggested, enjoined and restrained the defendants from in any way using either upon labels or otherwise, the word "Contadina," in connection with its product.

A number of witnesses were produced, who testified as to their business in purchasing and selling tomato paste. It appears that all of them had made purchases from both plaintiffs and defendants, and that the packages purchased from defendants containing this paste had on them one of the labels in dispute, and all these persons were in business in and around the city of Chicago. One witness testified that she kept a store in Forest Park. She also testified to the effect that when her customers asked for Contadina Brand tomato paste, she gave them the Signorina Brand, which is defendants' product. Another merchant engaged in the same business testified that when his customers asked for Contadina Brand, which is plaintiff's product, he would give them defendants' product, because he made more profit out of it. Several merchants who

dealt in this product, testified to the same effect. Another testified to the effect that he thought defendants' product was made by the same company as Contadina Brand, and that when he sold the Signorina Brand (defendants'), he thought it was made by the plaintiff's company. Another testified that in purchasing tomato paste, which he had dealt in for a number of years, he looked at the word Contadina and took it for granted that he was buying the same product that he had purchased for a considerable time through defendants.

In *Mossler v. Jacobs*, 66 Ill. App. 571, the complainant, engaged in the tailoring business, advertised his business under the style of "Six Little Tailors." Defendant conducted his business and advertised the same under the name and style of "Six Big Tailors," and there was proof offered to the effect that there were six big brothers in his family, all engaged in the tailoring business. The action was brought to restrain the use of the name, "Six Big Tailors," and in sustaining the injunction issued by the trial court, this court said:

"No person is entitled to represent his wares as being the goods of another man, or articles of his manufacture as having been made by another, and no person is by the law permitted to use any mark, sign, symbol, name, device or other means, whereby he makes a false representation, or deceives as to his own goods, or as to the goods of another, or whereby, without himself making a false representation to a buyer who purchases from him, he enables such buyer to tell a lie or to make an untrue representation to somebody else who is the ultimate customer. Nor is it a defense to an action, the gist of which is a charge of deception, to reply that the words uttered by the defendant were the literal truth, for the truth may be stated in a way likely to, and that does, deceive. What is required is,

that a party shall not conduct his business so that by what he says or does, he deceives customers to their injury, or to that of a competitor.

"A man may not use his own name for the purpose of deception, and such fraudulent use will be enjoined. Fair competition in business is legitimate and promotes the public good, but an unfair appropriation of another's business by using his name or trade mark, or an imitation thereof calculated to deceive the public, is not permissible and will be enjoined by a court of equity. *Hazelton Boiler Co. v. Hazelton Tripod Boiler Co.*, 40 Ill. App. 430; Same, 142 Ill. 509; *Reddaway v. Banham*, House of Lords, opinion filed March 26, 1896; *Celluloid Co. v. Cellonite Co.*, 32 Fed. Rep. 97.

"While the court is not bound to interfere where ordinary attention will enable the purchasers to discriminate between the trade-marks used on the goods manufactured by different parties, nevertheless, the character of the article, the use to which it is put, and the kind of people who are likely to ask for it, as well as the manner in which it is probable it will be ordered, must not be lost sight of. *Popham v. Cole*, 66 N. Y. 69, 23 Am. Rep. 22, and cases there cited; *Morgan's Sons v. Troxell*, 89 N. Y. 292, 42 Am. Rep. 294; *Manufacturing Co. v. Trainer*, 101 U. S. 51; *Ball v. Siegel*, 116 Ill. 137; *Reed v. Richardson*, 45 L. T. (N. S.) 54; *Beard v. Turner*, 13 Id. 746; *Leidesdorf v. Flint*, 7 N. W. Rep. 174; *Eggers v. Hink*, 63 Cal. 445; *Morgan's Sons Co. v. Troxell*, 23 Hun 932; *Ewing v. Johnston*, L. R. 18, Ch. Div. 612; *Apollinaris Co. v. Scherer*, 27 Fed. Rep. 22; *N. K. Fairbank Co. v. Swift & Co.*, 64 Ill. App. 477."

Prior to the filing of the complaint in this cause, plaintiff had complained to defendants of the character of label used by them in connection with the distribution and sale of tomato paste, and thereafter

defendants adopted another label. This last mentioned label is in the record, and an examination of it shows that it is quite similar to the label complained of, except in some slight detail. It also appears from the record that at the time the Contadina Brokerage & Distributing Company was incorporated and the name adopted by defendants, various officers and stockholders of plaintiff company were parties thereto and were instrumental in the adoption of the name, and that there was no complaint as to the corporate name during all the time plaintiff and this corporation did business together.

The label used by plaintiff in the marking of its product, and the two labels adopted by defendants, are so similar in every respect, except as to slight details, that anyone purchasing defendants' product with these labels attached thereto, might very easily be misled and to assume that the product was that of the plaintiff corporation. It is useless to cite the very great number of cases which support the doctrine advanced in the case of *Mossler v. Jacobs*, 66 Ill. App. 571.

We are of the opinion that defendants should be enjoined from using the character of label that appears in the record. It is very evident that they were adopted to simulate plaintiff's label and to deceive. Also, they should be enjoined from using the word "Contadina" as a brand for their product. We are of the opinion, however, that the court was in error in enjoining defendants from using their corporate name on their labels or in any other way in connection with the sale of their product. Defendants can very easily adopt labels and trade-marks which will not simulate the labels and trade-marks of the plaintiff, and can use their corporate name in such a way as not to mislead, if they choose to do so.

The decree is, therefore, reversed and remanded with the direction that the trial court enter a decree in conformity with this opinion.

*Reversed and remanded with directions.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.

### SUPPLEMENTAL OPINION.

To supplement the opinion already filed in this case, we add the following:

In its bill, plaintiff prayed for an accounting from defendants for profits claimed to have been made by them through the use of plaintiff's trade name, and the use of the simulated label described in our opinion. The master found that the defendants acted in good faith in endeavoring to settle their differences with plaintiff, and recommended that the defendants be not required to make an accounting for any such alleged profits. The trial court affirmed the master's report in this regard and denied plaintiff's prayer for an accounting. Upon this finding, plaintiff entered a cross appeal.

We are of the opinion that the master and court were in error in their holdings, and that if a proper showing is made that defendants made profits through the means suggested, plaintiff is entitled to an accounting therefor. The portion of the decree denying plaintiff the right to an accounting is reversed and the court is directed to enter such further orders as may be consistent with this supplemental opinion.

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.